The next case is Middlebrooks v. Bradt. Good morning. May it please the Court. My name is Valdi Lekul. I represent the plaintiff appellant, Mr. Middlebrooks. The district court here erred in two different ways in dismissing Mr. Middlebrooks's claims. First, it failed to view Mr. Middlebrooks's claims as an aggregate of an accumulation of events that caused a single constitutional harm to which the continuing violations doctrine applied. And secondly, it failed to recognize that Mr. Middlebrooks had, in fact, fully exhausted his grievances through the prison grievance procedure. Let me ask you this. Even if it was a continuing violation, if he received that April 9, 2012 letter, he's time barred because it's over three years from when he filed the complaint, right? Isn't that really the critical issue? Even if it's a continuing violation, if he got that April 9, 2012 letter at the time, it's over three years, right? Well, it would be over three years, but two points on that, Your Honor. One is that the government has conceded multiple times, half a dozen or more times, that in fact it is the November 2, 2012 letter that he got. They didn't concede that when the summary judgment that's the basis of this appeal happened. In that, they argued, right? They conceded it earlier in the case, but then when he took his deposition and he admitted that he received that letter, then they were able to use that. They had no evidence prior to his deposition that he had actually received that letter. So you're saying they can't, if they take his deposition, he tells them, I got the letter, they can't then argue that that should be the proper date? Well, one, Your Honor, I don't think his testimony concedes that he got that letter in April. And secondly, the district court even found that that concession could be binding on the government in this case. I mean, they argued essentially that there is no dispute that his complaint is timely if it was filed on November 2, 2015. Let me, if you're asked this question, so it's your testimony that in response to the April 9, 2012 letter, you went to Joe Chisholm and had him write that stuff up at the top, and he answers, he answers two different times. I know in your papers you were suggesting, you know, on the other occasion he says, yes, that's true. I didn't read those as ambiguous as you're suggesting there. Why didn't he say in response to both of those questions, I never got that April 9 letter? He wasn't asked if he got the April 9 letter. What he was asked was whether or not he went to Joe Chisholm to make the inscription after he received the notification of the April 12, April 9, 2012 letter. Now, I'm not trying to split hairs here. Mr. Middlebrooks' testimony was that he learned about the April 2012 letter in the November 2, 2012 letter. The sequence of events goes like this. February 16th, he is denied his third grievance. February 20th, within seven days, he files an appeal. Where did your client ever say in this litigation he never received the April letter? Did he ever? I think, Your Honor, that it's obvious from his testimony. What he is talking about in his letter, in his – when he writes a letter in 2015, he is explaining the sequence of events. And what he's explaining is he did not receive any response to his February 20th appeal. On October 24th, 2012, he sends another letter asking about the status of his appeal. He gets a letter from the government on November 2, 2012, saying your appeal was denied back in April. It is then that he goes to Joe Chisholm and says, can you confirm that I filed this, gets Mr. Chisholm to write that it was confirmed, and then sends it as a way to show that he, in fact, appealed in a timely way. You're saying that that conversation with Chisholm occurred, you know, six or seven months after? Yes, Your Honor. According to – Was it when he gave him that, six or seven months later, and wrote it on the sheet? Is that what you're saying? Well, that is what Mr. – that's the evidence in the record. The other thing I would point out, Your Honor, is that the government has been unable to produce this April 2012 letter, and the district court found that significant. Had they sent this letter, they would have been able to produce it. The other piece of it, too, is that there is no date stamped of his appeal. Under the docs regs, when there is an appeal, the facility is required to date stamp it. It seems to me that if this April 9th letter actually existed, and the appeal was late, there would be an April letter in the record from the government, as well as a date stamp. Let me ask you – I know you say we shouldn't look at this issue because the district court didn't rely on it, but – and correct me if I'm wrong – I think it's undisputed that there was nothing physically preventing your client, even when he was not allowed to receive the special meal in his cell, from going to the mess hall and getting that meal himself. I mean, I read multiple portions of the letter. I think he conceded that he had nothing physically preventing him from getting the food, right? That's correct, but that's not his argument, Your Honor. All right. Hold on. Okay. The second point is he knew that when they didn't give him the food in the cell, that it was available to him in the mess. It's not like he thought, there's no food for me. He knew if he just walked down to the mess hall, he could get it, right? What he – his testimony is he knew from the paperwork. But when – but his – that he knew that from the paperwork, not at the time. But I think the more important part of his testimony is he denies that he could simply walk down to the mess hall to get fed. And I'm referring here to page 420 of the record. Mr. Middlebrooks is asked during his deposition – and the deposition is somewhat messy because there's lots of times where he is interrupted and the pages aren't necessarily in sequence. And if I may just complete this point, he is asked, and from September 2011, you know that it, meaning the meal, is available in the mess hall. And his response is, that's not true, because you could only get it one way. Meaning that if there was a feed-in-cell order in place, and his meals were supposed to be delivered to his cell, he did not have an alternate path available to him to simply walk. I thought the feed-in-cell order had been suspended – rescinded in August. There is a factual dispute about that. There was an August 15th – Mr. Middlebrooks says that that rescission was bogus. It was August 15, 2011. Eleven days later, his first grievance is denied because, according to the facility, he's getting meals in his cell. Are you pursuing an Eighth Amendment claim here? He is, yes. Help me understand why you've plausibly alleged an Eighth Amendment claim. Because he missed over 30 meals over a six-month period, including a period of time where he missed 22 meals over a period of 18 days. It's not that he couldn't get the meals. It's that they were not available to him, and when they were not sent to his cell, he was not fed. I don't have – I looked through this record in a lot of detail, looked through all the sites. There is nothing in this record that indicates there was anything preventing him from going to that mess hall and getting those meals. Your Honor – It's not a – as a matter of fact, one of the other pages, 430, he was asked, so you understood as of January 24, 2012, that your therapeutic diet was being brought back to C mess hall, right? He answers, yes. There's nothing ambiguous about that answer. He knew that food was sitting in the mess hall if he just walked down and got it. Your Honor, again, I will refer to his testimony that his – What about that piece of testimony? What does that mean when he says, So you understood as of January 24, 2012, that your therapeutic diet was being brought back to C mess hall. He answers, yes. There's no yes but. There's nothing. January 24 is the last day of the continuing violation. 420, he says, as of September 16, 2011, he understood that. He says he read the letter in August when they told him he was going to get it in his cell. So at every point in this case, I understand he thinks it's bogus and that it's not proper, but at every point he understood where that meal was, if he wanted it. But his – I think there's a dispute of fact. His position is that in effect that he was subject to the order and when the defendants preclude the prison personnel from bringing it to his cell, it's the only way he can get it. And again, I refer, Your Honor, to page 420 where he does make that dispute. It's a question of fact. I'm not arguing that it's dispositive. But he is arguing that once he's in the feed-in-cell process, that he doesn't have that option. But 420, I read it the exact opposite. When he's asked, do you understand that you could get it in the mess hall, he says, yes, I could have, but I didn't need to. So his position was, yeah, it was in the mess hall, but I was supposed to get it in my cell. He didn't say, no, I couldn't go down to the mess hall. They told me I couldn't go. So you're citing a page where he says the opposite. Your Honor, I think if you go down further on that page at the bottom, you'll see where he says that's not true. You could only get it one way. What does that mean? Meaning he could only get his meals one way. So when he's ordered to get it in his cell and the defendants prevent that meal from coming to his cell, he doesn't have the option of going to the mess hall. It is a disputed question of fact on that record. Thank you. Good morning, Your Honors. Jennifer Clark on behalf of Appellees, who asked this Court to affirm the District Court's decision granting summary judgment to defendants. In our brief, we provided a number of reasons to affirm, and I will jump to first the merits and at the very least the question of qualified immunity. Here, it seems undisputed on the record that there's no excessive risk to medical infirmity that required his food to be brought to his cell. As to the subjective prong of the Eighth Amendment... Is there an underlying physical problem that necessitated this diet? Well, there are two issues, Your Honor. There's the question of a therapeutic diet, which is... There's a number of things it could be. In Plaintiff's case, it appears to be a low-sodium, low-fat diet, which he There was never a point where he was taken off of the therapeutic diet that's at issue in this case. So there's the therapeutic diet question, and then there's the question about how he receives those therapeutic meals. And so the only thing that's at issue in this case is the delivery of meals to his cell versus picking up meals in the mess hall. I do not understand Plaintiffs should be raising an issue with regards to I was given a non-therapeutic diet at some point when I should have received a therapeutic diet. The issue is whether or not that therapeutic diet came to his cell. I take it then you're conceding that the availability of a therapeutic as opposed to a non-therapeutic diet implicates the Eighth Amendment? I'm not conceding that, Your Honor. I just don't believe that's at all at issue in this case. There's nothing in his complaint that could be construed to argue that point versus the point that he says repeatedly in his deposition and elsewhere, which is I wanted to receive my meals in my cell. So it's where he is getting the food that's at issue in this case. This case simply just doesn't present the issue of what food that is. Your opposing counsel, as you heard, says there's a disputed fact about whether when he didn't get it in his cell, whether it was available to him in the mess hall. What's your response to that? Your Honor, I simply don't agree that the record supports that at all. To the extent that you can read the testimony that my opponent was citing as Mr. Middlebrooks in fact making that assertion, it's completely, it's based on nothing. He never attempted to go down to the mess hall to receive his food, as he states in his deposition. And everything else, so he doesn't know that, and everything else in the record makes clear that he could have received it at the mess hall. There is, at A41, in fact, in his grievance, one of his grievances, he himself says, I was told my food was down to, I was told to go down to the mess hall to get my food. So he says that himself in a grievance. He testified repeatedly at his deposition at A417 to 421 and 430 that he was told he could have gone down to the mess hall and that he understood the multiple responses to his grievances, each of which told him that he could receive his food in the mess hall. There's a declaration on the record in which one of the defendants says, I told him to go to the mess hall and get his food. That's at A381. So it's simply, that's a manufactured dispute that is simply not disputed on this record in actuality. What about the April letter? Sure. So, Your Honors, with regards to the April 2012 letter, in the deposition, in the page that we discussed earlier, which I believe is A438, it seems quite clear that he repeatedly agrees that he did in fact receive that letter. But that's not the only, and he had obviously opportunity at that point to say, I never got that letter. When he files objections, which he does file objections to the R&R, the third one that comes after that deposition testimony, the magistrate judge puts in his report and recommendation that he received the April 9th letter and he does not object to that. He doesn't say that he didn't receive the April 9th letter in his objections. And in fact, there were three rounds of summary judgment in this case. In the second round of summary judgment, this issue had come up as well. Plaintiff puts in objections at that point and he says himself, I received the April letter and in response to that, I sent an October letter. What's the citation for that one? Give me a second. I have it here. Oh, so that is actually not part of the appendix, but if you look at district court docket number 36, those are his objections to the second R&R and that is where he says, and I might have the quote, just give me a moment, please. I don't have his quote here, but he says that he wrote his October 24th, 2012 letter in response to the April 2012 letter. And again, that's district court docket, entry number 36. And your honors, putting aside the questions of exhaustion and timeliness, if the court has any questions, I will address those. At the very least here, it seems quite clear that there is no case that would have clearly established to defendants that an inmate who had no medical necessity for food to come to his cell could have possibly, they could have possibly been violating the Constitution not bringing that food to his cell, particularly after a feed-in-cell order had in fact been rescinded. The record makes quite clear that that document is not a forgery. That is nothing more than his conclusory allegation to the contrary, but if you compare the version of the document that he submitted to the version that defendants submitted, they're identical in every respect except for that the doctor's stamp did not make it all the way down to the fourth carbon copy. Otherwise, the curlicues on the signature, everything is precisely the same. So there's simply no dispute that that's an actual document rescinding the feed-in-cell order. Unless this court has any further questions. I'll address the issue of exhaustion and the continuing violations doctrine briefly. So as I understand the appellate's position, he's relying on the second grievance to establish exhaustion and then looking to the continuing violations doctrine, the last act in furtherance would relate to the third grievance. And I'm not, it doesn't make a lot of sense to me that you could mix and match to achieve exhaustion. So could you address that point for me? Yes, Your Honor. To the extent that that is the argument that he's making that he would be attempting to sort of loop in the third grievance process that he did not exhaust into the second grievance, which is the only one of the three that he did fully exhaust. That simply runs contrary to, for example, the Supreme Court's decision in Ross that made quite clear that there are an extremely limited number of exceptions to the exhaustion doctrine that it's mandatory that in every circumstance with those exceptions to the side that an inmate exhaust and exhaust properly. And there's simply no support for his... If I'm understanding the argument correctly, and I'm sure I'll get a reply on rebuttal, but if I'm understanding it correctly, assuming the continuing violation doctrine would apply here for the moment, it would mean that you could have exhausted a grievance years before and have no, it seems it would completely undercut the rules about exhaustion and the purposes behind them. I would agree completely, Your Honor, and I think that to the extent that is... Are you aware of any case where this has worked as a basis for exhaustion? I'm not aware of any case, no, and it seems quite clear that subsequent to Ross it could not. So I do not think that's a supportable theory. Thank you, Your Honors. My apologies. I should have asked you the first time around. That's okay. So the continuing violations doctrine, I think the Court here made the mistake when it carved up the six-month period into three separate segments. This is a repeated course of conduct. It's like sexual harassment. It's like the Morgan case where the Supreme Court said hostile work environment, you measure from the date of the last event. It sweeps in all other acts. That is the basis of the continuing violations doctrine. Assuming hypothetically that your client got the April letter, do we need to reach the continuing violation issue? You do not need to reach the continuing violations issue. But on the issue of, just to go through the exhaustion issue, the exhaustion... This Court's decision in Johnson says you have to exhaust, and if you've previously exhausted, then you don't have to exhaust again. And so I understand the Court's concern about it having exhausted many years ago, but that might be so disconnected that there would be no continuing violations doctrine. In other words, the prior events may be so far removed in time or circumstance that he hasn't exhausted this particular event. But that's not what happened here. He's talking about the same meal denials at the same place at the same time. So, thank you. Thank you both. And we'll take the matter under advisement and thank you for your assistance to the Court on this matter. That's the last case to be argued this morning, so I'll ask the Clerk to adjourn Court. Thank you.